## LEWIS ET AL. *v.* BUNNELL ET AL.

### [No. 23,589. Filed June 2, 1921.]

1. HIGHWAYS.—*Establishment.*—*Jurisdiction of Board of Commissioners.*—*Laying Out New Highway Over Existing Road.*—*Statutes.*—In a proceeding for the location, opening and establishment of a new public highway, the board of county commissioners had jurisdiction under §§7649, 7650 Burns 1914, Acts 1907 p. 443 and §7654 Burns 1914, Acts 1905 p. 521, to lay out a new highway thirty-five feet wide extending in part of its course along an existing highway eighteen feet wide, thus widening the old highway for the distance that both follow the same route. p. 590.

2. HIGHWAYS.—*Establishment.*—*Appeal from Board of County Commissioners.*—*Questions Triable.*—*Route of Highway.*—*Statute.*—On appeal from a decision of the board of county commissioners granting the prayer of a petition for the location, opening and establishment of a new public highway, the court and jury have no authority under §7650 Burns 1914, Acts 1907 p. 443, to review and set aside the action of the viewers on the ground that there had been a violation of such statute in that the highway was laid out through an inclosure of more than one year's standing, without the owner's consent, and a good way could otherwise be had by departing only a short distance from the route petitioned for, though, under §§7653, 7657 Burns 1914, Acts 1905 p. 521, §§6, 9, they may

decide whether the highway, as finally laid out and established, will be of public utility and whether it will damage land and in what amount. pp. 592, 593.

3. EMINENT DOMAIN.—*Exercise of Right.*—*Regulation.*—*Power of Legislature.*—So long as private property is taken only for public use, and the damage caused thereby is compensated, the legislature has the power to determine, either directly or through agencies chosen by it, when convenience or necessity requires that such property be taken, and what particular property shall be taken. p. 593.

4. APPEAL.—*Review.*—*Harmless Error.*—*Exclusion of Evidence.* —The exclusion of evidence which would not have established the defense in support of which it was offered was not prejudicial error. p. 595.

From Montgomery Circuit Court; *Jere West,* Judge.

Proceedings for the establishment of a highway on the petition of R. N. Bunnell and others, in which Allen M. Lewis and others filed remonstrances. From the judgment rendered, the remonstrators appeal. (Transferred from the Appellate Court under §1392, cl. 10, Burns' Supp. 1918, Acts 1915 p. 149.) *Affirmed.*

*Chase Harding,* for appellants.
*Harry N. Fine,* for appellees.

EWBANK, J.—This was a proceeding for the location, opening and establishment of a new public highway, commencing one mile north of the town of Wingate, in Montgomery county, Indiana, and running east a distance of two miles across sections 11 and 12, connecting two existing highways which run at right angles with it. The petition properly alleged the necessary jurisdictional facts. Due notice being given, and proof of notice made, and proof being also made that the petition was signed by more than twelve freeholders of the county, more than six of whom resided in the immediate neighborhood of the proposed highway, and that the petition had been filed more than twenty days before the session of the board for which the notice was given,

the board of commissioners appointed viewers, who proceeded to view the road, and filed their report. They reported that a highway over the precise route described in the petition, extending for a distance of two miles east and west along the half-section lines, across the middle of sections 11 and 12, would be of public utility.

Each of the appellants filed a remonstrance containing many specifications, including charges that the proposed highway would not be of public utility, and that lands of the remonstrators would be damaged, and also the following: "(4) That the west half mile of said proposed highway is attempted to be located upon the line of an existing public highway, and the petition in said matter does not ask for the vacation, change or relocation of any existing highway, nor for the recording of an existing highway."

Appellants Cone and Malsbarry also alleged as follows: "(5) That the proposed highway is laid out through an inclosure of more than one year's standing, and remonstrator has not in any way consented to such location, and a good location, and a good way, can otherwise be had without departing essentially from the route petitioned for."

Several of the appellants also remonstrated on the alleged ground that lands owned by them, respectively, would be damaged, and based their respective demands for damages upon the alleged fact that the proposed highway would run through their inclosed lands of more than one year's standing, and destroy their fences; and appellant Cone added a statement that it would cut off ten acres of his land from the rest, in a long, narrow strip, with no water therein for stock.

The board of commissioners appointed reviewers, who also filed a report that the proposed highway, upon the route petitioned for and described in the original report

of the viewers, would be of public utility, and that certain of the remonstrators should recover damages, as stated. The board thereupon made a finding that the proposed highway would be of public utility and ordered it established.

An appeal was taken to the circuit court, where the cause was tried by a jury, who returned a verdict that the proposed highway be located, established and opened as described in the petition and report of the viewers, that the petition was signed by twelve free-holders of the county, six of whom resided in the immediate neighborhood of the proposed highway, that it would be of public utility, that appellant Cone would be damaged $200, and found against the remonstrators on all other matters in their remonstrance.

A motion for a new trial for the alleged reasons (1) that the verdict was not sustained by sufficient evidence and was contrary to law, (2) that the court erred in excluding certain evidence, and (3) in giving certain instructions, was overruled, and the appellants excepted, and perfected an appeal. They have assigned as error the overruling of their motion for a new trial, under which they insist that the board of commissioners and the circuit court were without jurisdiction to establish the highway, because, they say, (a) the west half mile of the proposed highway is located along and embraces within its limits an existing lane dedicated to use by the public as a highway, and (b) the proposed highway as laid out runs through a person's inclosure of one year's standing, without the owner's consent, although a good way could otherwise be had without departing essentially from the route petitioned for. §7650 Burns 1914, Acts 1913 p. 679.

The undisputed evidence is that an ancient "cartway," said to have been laid out in 1833, runs in a north-westerly direction across several farms in sections 13,

12 and 11, to the center of section 11, and thence directly west on the half-section line, following the route on which this highway has been ordered established, one-half mile to the western terminus of this highway; that seven gates are maintained across the portion of this cartway southeast of the center of section 11, but, while there used to be a gate across the west half mile, it is, and for some years has been an open lane. Several years ago this lane was graveled. Six or more farms and two residences for which the proposed highway will afford an outlet now lie at a distance from any public highway, and have access to public highways only over the cartway and lane.

The width of the lane is not shown by the evidence, and was not specified in the order of the board of commissioners establishing it, but the statute in relation to laying out and establishing roads, which was then in force (§§30-34 R. S. 1831 p. 449), provided for laying out cartways with gates across them, "not exceeding eighteen feet in breadth." And it is not an unfair inference that the lane is eighteen feet wide. The lane has been traveled by the public within the recollection of witnesses for more than fifty-three years. The proposed highway is laid out thirty-five feet wide, so that, for half a mile at the west end, it will embrace the whole width of the lane, and in effect will merely widen an existing highway.

Appellant Cone testified that his land extends across the half-section line along which the proposed highway is laid out, so that nine or ten acres of his sixty-two-acre farm will be cut off north of the new road, and that the field through which the road runs is all fenced round the part that the road touches. Nobody testified to the contrary. That he had continuously opposed the opening of the highway across his land at all times was also made to appear. It was also proved, without dispute,

that the land over which the highway is laid out and for many rods on either side is substantially level.

The court gave an instruction (No. 8) that, even if there was a public cartway established upon a part of the route of the proposed highway, this would not necessarily defeat the right to establish such highway, but could be considered in determining whether or not the proposed road would be of public utility, but that, if the evidence warranted it, the new highway could be established covering the public cartway.

And the court also gave an instruction (No. 9) that, as to the alleged ground of remonstrance that the proposed highway was laid out through an inclosure of more than one year's standing, and the owner had not in any way consented to such location, and a good way could be had without departing essentially from the route petitioned for, "there is no reason presented which would defeat the establishment of the road in question, and as to this cause you will find against the remonstrators."

Appellants insist that, since the route petitioned for was along an existing public highway for half a mile at one end, and since this is a proceeding to open a new road, and not to vacate, change or widen an existing highway, the board of commissioners was without jurisdiction as to the entire project, when it was made to appear that a second highway was proposed to be laid out and established longitudinally upon an existing highway already located on the same ground, and therefore that instruction No. 8 was erroneous.

In this we think the appellants are in error. The statute provides that when twelve resident freeholders, with the required qualifications, shall properly petition for the "location, vacation or change" of a highway, and proper notice has been given, the board of com-

missioners shall appoint three qualified freeholders "to view said highway." §7649 Burns 1914, Acts 1907 p. 443. The viewers, having been sworn, "shall proceed to view the highway to be located, or vacated, or the change to be made," and if deemed of public utility, "they shall in case of a new highway or change in an old one, proceed to lay out and mark the same," etc. §7650 Burns 1914, *supra*. If a proper remonstrance is filed, and reviewers are appointed, they shall "proceed to review the proposed highway and assess the damages, if any, which such remonstrator may sustain from such highway being opened, vacated or changed through his lands." §7654 Burns 1914, Acts 1905 p. 521, §6.

There is nothing in these provisions of the statute inconsistent with the right to lay out a new highway thirty-five feet wide, extending in part of its course along an old highway eighteen feet wide, thus widening the old highway for the distance that both follow the same course. *Opp* v. *Timmons* (1898), 149 Ind. 236, 48 N. E. 1028; *Pittsburgh, etc., R. Co.* v. *Gregg* (1913), 181 Ind. 42, 52, 102 N. E. 961; *Fanning* v. *Gilliland* (1900), 37 Ore. 369, 61 Pac. 636, 62 Pac. 209, 82 Am. St. 758; *Folsom* v. *County Commissioners* (1899), 173 Mass. 48, 53 N. E. 155. In the case last cited the new way petitioned for was to be 5,263 feet long, and sixty feet wide and for the distance of 663 feet at one end it followed the course of an existing highway thirty-five feet wide, which was to be embraced within its boundaries. The Supreme Court of Massachusetts said: "The petition for the way was for a way running southerly from Mt. Vernon Street, and in extension of Highland Avenue, and thus manifestly contemplated taking this old way as was done, unless it shall be held that, because what is wanted is described as the laying out of a new way, the scope of the prayer and the jurisdiction of the respondents was diminished.

But it would be unreasonable to attach so much importance to nomenclature. What was wanted was plain, and the procedure was the same, whatever the thing was called. *Commonwealth* v. *Berkshire County Commissioners*, 8 Pick. 343, 345. *Bliss* v. *Deerfield*, 13 Pick. 102, 106, 107. Indeed, it seems to us that the form adopted was strictly proper, and that when the alteration of an old way is merely incident to what in substance is the laying out of a new one, it would be a superfluous nicety to require different prayers for different parts of the way. Assuming that they acted within the scope of the petition, we see no reason to doubt the power of the county commissioners. That they could have widened the old way, or located it anew, is plain. It seems to us that their action was equally effectual when it took the form of establishing and ordering the construction of a new way within the new boundaries."

The fact that the highway followed the course of the existing lane did not deprive the board of commissioners of jurisdiction, and there was no error in giving the instruction, No. 8. 37 Cyc 115, 116.

Appellants urge that instruction No. 9 was erroneous, insisting that it was error to tell the jurors that the road could not be defeated on the ground that it was

2. laid out through an inclosure of more than one year's standing where the owner had not consented to such location and a good way could otherwise be had by departing only a short distance from the route petitioned for, and that the question whether this road was laid out in violation of the statute should have been left to the jury. But appellants are mistaken as to the provisions of the statute in relation to passing through such an inclosure (§7650 Burns 1914, *supra*) being mandatory, and as to the court and jury having authority to set aside the action of viewers upon con-

cluding that the statute was not obeyed in this particular. *Speck* v. *Kenoyer* (1905), 164 Ind. 431, 437, 73 N. E. 896.

So long as private property is taken only for public use, and the damage caused by taking it is compensated, the legislature has power to determine,
3. either directly or through agencies chosen by it, when convenience or necessity requires that such property be taken, and what particular property shall be taken. *Westport Stone Co.* v. *Thomas* (1911), 175 Ind. 319, 321, 94 N. E. 406, 35 L. R. A. (N. S.) 646; *Henderson* v. *Lexington* (1908), (Ky.) 111 S. W. 318, 22 L. R. A. (N. S.) 20.

Whether a proposed highway will be of public utility, and whether a landowner will be damaged, and in what amount, are judicial questions. And the statute
2. authorizes "any person through whose land such highway or change may pass" to file a remonstrance stating "that he is damaged thereby in a sum mentioned." §7653 Burns 1914, Acts 1905 p. 521, §5), also "any freeholder of, and residing in, such county (may) remonstrate against the proposed highway * * * as not being of public utility." (§7657 Burns 1914, Acts 1905 p. 521, §9.)

The questions presented by these remonstrances, whether the highway, as finally laid out and established, will be of public utility, and whether it will damage the lands of a remonstrator, and in what amount, may be submitted to a jury on appeal, as being essentially judicial questions to be determined by a court. But the exact location of the highway and whether, being of public utility and the damages being paid, the highway shall run in a straight line through these two sections, crossing the farm of a remonstrator twenty rods or more south of its north end, or shall make the neces-

sary turns and follow around the boundary of his farm, and whether such a departure from a straight line cannot be made without departing essentially from the route petitioned for, involve questions of choice and discretion on the part of the viewers which cannot be reviewed by the courts.

The statute provides that one who is dissatisfied with the action of the viewers may have reviewers appointed (§§7653, 7654 Burns 1914, *supra*), and that on the application of any resident freeholder "other reviewers may be appointed" (§7657 Burns 1914, *supra*), but it makes no provision for the circuit court or a jury in that court to act as viewers, or to pass on the questions of suitableness and expediency involved in choosing between two or more possible routes for the highway.

Controversies as to the extent of the powers of juries in appeals of drainage cases have been repeatedly before the Supreme Court, and the decision has invariably been that questions as to the exact location of the proposed drain, if established, were conclusively determined by the report of the viewers, and that the only questions for the jury were as to the public utility of the drain if constructed on that route, and the damages by reason of such construction. *Wilson* v. *Talley* (1896), 144 Ind. 74, 78, 42 N. E. 362; *Thompson* v. *Ryan* (1915), 183 Ind. 232, 238, 108 N. E. 98; *Zigler* v. *Menges* (1889), 121 Ind. 99, 102, 22 N. E. 782, 16 Am. St. 357; *Sample* v. *Carroll* (1892), 132 Ind. 496, 498, 32 N. E. 220; *Chandler* v. *Beal* (1892), 132 Ind. 596, 598, 32 N. E. 597; *Bonfoy* v. *Goar* (1895), 140 Ind. 292, 296, 39 N. E. 56. The court properly refused to submit to the jury the question whether a good way could otherwise be had which would not pass through an inclosure of a year's standing, without departing essentially from the route petitioned for, and did not err in giving instruction No. 9.

Appellant complains of the exclusion of certain evidence; and appellee insists that no question was saved, for lack of a proper question and proper offer to prove facts responsive to such question when objected to. But under the law as above declared the excluded evidence would not have established the defense in support of which appellant says it was offered, and it is not necessary to decide whether or not a proper offer was made.

The evidence was amply sufficient to sustain the verdict under the law as we have declared it. The judgment is affirmed.